## FARRELL *v.* PAULUS.

1. HUSBAND AND WIFE—TENANTS BY ENTIRETY—JUDGMENT CREDITOR OF HUSBAND.

   In judgment creditor's suit to reach assets of judgment debtor, quitclaim deed by latter to his wife of his interest in property held by them as tenants by the entirety is not set aside while wife is yet living since plaintiff would not be aided thereby because neither the land nor the rents and profits therefrom would be subject to levy on execution for the sole debt of the husband.

2. FRAUDULENT CONVEYANCES—REAL PROPERTY—BULK SALES ACT.

   A conveyance of real estate is not within the provisions of the bulk sales act, such act applying to sales of stocks of merchandise (2 Comp. Laws 1929, § 9545 *et seq.*).

3. SAME—BULK SALES ACT—TRANSFER OF INTEREST IN PARTNERSHIP—PENDENCY OF ACTION.

   The status of plaintiff with whom one defendant had a contract to repurchase certain shares of stock in a brewing company which went bankrupt and from whom plaintiff had made demand for return of his money, as a creditor, is determined as of the date when plaintiff's cause of action arose, not the date when judgment was obtained or entered, hence debtor's transfers of interest in partnership which left him insolvent and which were made during pendency of action in which judgment was rendered against him are void as to creditors, notwithstanding an attempted compliance with the bulk sales act (2 Comp. Laws 1929, § 9545 *et seq.*).

4. SAME—BULK SALES ACT—PARTNERSHIP—NOTICE.

   Under the bulk sales act, the transfer of an interest, in whole or in part, in the assets of a copartnership consisting of a stock of merchandise, or merchandise and fixtures, otherwise than in ordinary course of trade and in the regular prosecution of the business, is void as to creditors unless the purchaser receives a list of creditors of the seller, under oath, and unless

the purchaser notifies every creditor stated in the list, or of which he has knowledge, of the proposed sale (2 Comp. Laws 1929, § 9545 *et seq.*).

5. SAME—BULK SALES ACT—KNOWLEDGE OF ATTORNEY OF DEBTOR AND TRANSFEREES—SUFFICIENCY OF NOTICE.

In judgment creditor's suit to reach assets of debtor, brought against debtor and transferees of partnership assets, who were his wife, son, partner and latter's wife, where transfers were arranged by debtor's attorney during pendency of action in which plaintiff obtained his judgment, the knowledge of the attorney of plaintiff's claim was sufficient notice to defendants thereof and, where the parties failed to comply with the bulk sales act, plaintiff has a right to follow the property in the hands of defendants (2 Comp. Laws 1929, § 9545 *et seq.*).

6. SAME—INTENT—CONSIDERATION.

Transfer by debtor of plaintiff of partnership interest to debtor's wife and "to the said partnership" with intent to hinder, delay and defraud plaintiff creditor who was then prosecuting action against such debtor was void as against such creditor, especially where it does not appear that the debtor's indebtedness, if any, to his wife or to the partnership was satisfied, cancelled or discharged (3 Comp. Laws 1929, §§ 13395, 13434).

7. SAME—INTENT—CONSIDERATION—INSOLVENCY.

The actual intent of one who transfers his assets to others without a fair consideration is unimportant where it leaves the transferor insolvent (3 Comp. Laws 1929, § 13395).

8. SAME—ACTUAL INTENT DERIVED FROM SURROUNDING CIRCUMSTANCES.

In a suit to set aside a conveyance alleged to have been made with actual intent to hinder, delay or defraud present or future creditors, the only method of determining actual intent is by a consideration of the circumstances surrounding the transaction (3 Comp. Laws 1929, § 13398).

9. SAME—ACTUAL INTENT—BADGES OF FRAUD.

Surrounding circumstances which usually accompany an actual intent to hinder, delay or defraud creditors and from which fraud may be inferred are called badges of fraud (3 Comp. Laws 1929, § 13392 *et seq.*).

10. SAME—INSOLVENCY OF GRANTOR.

When a questioned conveyance renders the grantor insolvent, fraudulent intent may be inferred (3 Comp. Laws 1929, § 13392 *et seq.*).

11. SAME—TRANSACTIONS BETWEEN MEMBERS OF A FAMILY CLOSELY
    SCRUTINIZED.

> As a general rule transactions between members of a family
> must be closely scrutinized when the rights of creditors are
> involved and when such transactions are accompanied by other
> badges of fraud, a full explanation of the conveyance is re-
> quired when it is challenged by an unsatisfied creditor (3 Comp.
> Laws 1929, § 13392 *et seq.*).          •

12. SAME—EQUITY—SUFFICIENCY OF CONVEYANCE SET ASIDE TO SAT-
    ISFY PLAINTIFF'S CLAIM.

> Transfer of one-fourth interest in partnership to debtor's son
> which left debtor insolvent and which was made without any
> consideration is only portion of transferred interest set aside
> where subjection of such portion or the income therefrom is
> sufficient to satisfy judgment creditor's claim and equity does
> not require that judgment debtor's wife be divested of her
> interest in the partnership for the benefit of plaintiff herein
> (Comp. Laws 1929, § 9868, § 13392 *et seq.*).

Appeal from Wayne; Moynihan (Joseph A.), J.
Submitted June 13, 1944.   (Docket No. 37, Calendar
No. 42,606.)   Decided September 11, 1944.

Judgment creditor's bill by Leo M. Farrell against
John Paulus and others to set aside conveyances and
for a receiver.   From decree setting aside only the
conveyance of an automobile, plaintiff appeals.   Af-
firmed as to setting aside conveyance of automobile
and refusal to set aside deed to wife.   Reversed as
to interest in partnership and cause remanded.

*Victor H. DeBaeke* (*Harry Cohen* and *John Sklar*,
of counsel), for plaintiff.

*Frank G. Schemanske,* for defendants Paulus and
Club Chene-Trombly, Inc.

*Thaddeus M. Machrowicz,* for defendants Daniel-
ewski.

Boyles, J. On May 26, 1939, plaintiff Leo M. Farrell recovered a judgment against defendant John Paulus for $5,312.50 and costs. His cause of action was based on an oral agreement whereby Paulus had agreed to repurchase certain shares of stock in a brewing company which went bankrupt. In September and again in December, 1937, plaintiff had demanded from Paulus the return of his money, started suit in May, 1938, and obtained judgment against Paulus in May, 1939. Paulus did not appeal and plaintiff took out execution which was returned wholly unsatisfied.

In January, 1940, plaintiff filed the instant suit in chancery, a judgment creditor's bill in aid of execution, to reach certain property held by the other defendants herein. Plaintiff claims that this property was transferred by Paulus to these defendants without compliance with the bulk sales act, 2 Comp. Laws 1929, § 9545 *ct seq.* (Stat. Ann. § 19.361 *et seq.*), and also that the transfers are void under the fraudulent conveyance act, 3 Comp. Laws 1929, § 13434 *et seq.* (Stat. Ann. § 26.971 *et seq.*)..

The lower court referred the case to a circuit court commissioner, and entered a decree confirming the report of the commissioner holding that plaintiff had failed to establish the allegations in his bill of complaint except as to an automobile. Plaintiff appeals.

The property in question consists of an automobile, a parcel of real estate, and Paulus' interest in a certain copartnership. As to the automobile, the lower court decreed the transfer to be void and defendants have not appealed, or cross-appealed, from the decree. For that reason no issue as to the automobile is involved in this appeal. As to the real estate, it satisfactorily appears from the record that this parcel of real estate had been held by John Paulus and his wife Elizabeth for many years as tenants by the entirety and Paulus merely quit-

claimed to his wife whatever interest he had therein. 3 Comp. Laws 1929, § 13069 (Stat. Ann. § 26.201); *Ash* v. *Ash,* 280 Mich. 198. The validity of the quitclaim deed is attacked by plaintiff, but if it were set aside the title would again be in the name of Paulus and wife as tenants by the entirety and plaintiff would not be aided thereby because neither the land nor the rents and profits therefrom would be subject to levy on execution for the sole debt of the husband. *American State Trust Co.* v. *Rosenthal,* 255 Mich. 157. A conveyance of real estate is not within the provisions of the bulk sales act which applies to sales of stocks of merchandise, or merchandise and fixtures. Under the circumstances of the case the quitclaim by Paulus to his wife of the lots 1 and 2 hereinafter referred to will not be set aside and it is of importance only as bearing on the entire issue of fact whether Paulus divested himself of all of his property with intent to hinder and defraud plaintiff as a creditor.

The more serious question concerns the transfer by John Paulus of his interest in a copartnership.

In 1929 defendants John Paulus and his wife Elizabeth and John Danielewski and wife Clara formed what they considered as a copartnership to own and operate a bowling-alley business. Apparently it was an indefinite arrangement, no partnership articles being signed. This was before the enactment of the statute permitting husband and wife to become copartners, Act No. 72, § 6, Pub. Acts 1917, as amended by Act No. 272, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 9846, Stat. Ann. 1943 Cum. Supp. § 20.6). They contributed varying amounts, which ultimately seem to have been either confused with or considered as loans to the partnership or to Paulus. The business was established in 1928 or 1929 on four lots at Chene and Trombly streets in Detroit. Title to the two corner lots

1 and 2 hereinbefore referred to, was in the names of John and Elizabeth Paulus as tenants by the entirety. Title to the adjoining lots, 3 and 4, was taken in the name of Elizabeth Paulus. Mr. Paulus purchased the lots and Mrs. Paulus admits that the money did not come from her, that Mr. Paulus made the payments. The bowling alley building was put up on lots 3 and 4 out of money from the business. A beer garden or tavern was operated by these four defendants on lots 1 and 2. Paulus drew money from the partnership to invest in the brewery company, considered by defendants as a loan. Defendants also claim individual loans were made to Paulus. In 1939, after the brewery enterprise failed, and some time after plaintiff herein had demanded reimbursement from John Paulus, the latter executed the quitclaim deed to his wife of his interest in the tenancy by the entirety hereinbefore referred to. In March, 1939, when plaintiff's suit against Paulus was about to come up for trial in the circuit court for Wayne county, the defendant Paulus obtained a short adjournment and immediately thereafter Paulus divested himself of further ownership in the partnership. On March 28th Paulus executed an affidavit apparently intended to comply with the bulk sales act, reciting:

"That he is transferring and assigning all his interest in the said copartnership *to the partnership and to Elizabeth Paulus* as per a separate agreement to be entered into between John Paulus and the remaining partners."

This affidavit inventoried the partnership assets, and Paulus concluded with the statement:

"Deponent further states that at the present time he has no creditors and no outstanding indebtedness."

On April 4th an agreement was signed by Paulus and his wife and by Danielewski and his wife, reciting that they were copartners, and agreeing that "in consideration of the waiver by the said partnership and by Elizabeth Paulus of all claims against him by virtue of the amounts advanced to him, that the said John Paulus herewith quitclaims and releases *to the said partnership and to Elizabeth Paulus* any and all right, title and interest which he now has in the said partnership, or its assets."

On this same date, April 4th, these same four individuals (including John Paulus) executed bills of sale of the personal property of the partnership, as inventoried in the Paulus affidavit, to "Club Chene-Trombly, a Michigan corporation." Again on the same day, the capital stock of the Club Chene-Trombly, Inc., a Michigan corporation, consisting of 2,500 shares, was issued as follows: One fourth to Danielewski, one fourth to his wife Clara, one fourth to Elizabeth Paulus, and one fourth to Joseph Paulus, the 22-year-old son of John and Elizabeth Paulus, a student at Ann Arbor.

By these transactions, admittedly John Paulus divested himself of all of his property. Defendants Danielewski and wife continued to own one half of the partnership property through the medium of stock ownership in the corporation; the one-fourth interest of Elizabeth Paulus (assuming she had such an interest) continued as before, as one fourth of the stock of the corporation; and if we assume that John Paulus also had an equal one-fourth interest, it may be said to have become the property of his son through the same medium of stock ownership, although the son paid no consideration for the same.

These transactions were consummated April 4, 1939, during the adjournment of the suit of plaintiff herein against John Paulus. As hereinbefore stated, on May 26th plaintiff on jury trial recovered the

judgment against John Paulus for $5,312.50 and costs, on which his instant case as a judgment creditor is based.

The record is not conclusive as to whether John Paulus was indebted to his wife. Their business transactions were indefinite and inconclusive. She repeatedly testified that she still had her own money, that none of her own money went into the business, and at other times testified that she gave money to her husband. However, there is no such confusion as to the son. There is no claim that either John Paulus or the partnership was indebted to the son. There is also no question but that after these transactions John Paulus was insolvent.

While the affidavit of John Paulus on March 28, 1939, intended to comply with the bulk sales act, stated that he had no creditors, and might have been made in good faith, it cannot be said to be true, as a matter of law. His counsel urges that plaintiff herein was not a creditor of John Paulus at that time, nor until his claim was reduced to judgment, that a suit pending did not mean an indebtedness. That is not the law. The debt existed on, and before, March 28, 1939, although plaintiff did not become a *judgment* creditor until May 26th. The status of creditor is determined as of the date when plaintiff's cause of action arose, not the date when judgment was obtained or entered. *Hanna v. Hurley,* 162 Mich. 601; *Ashbaugh v. Sauer,* 268 Mich. 467.

Under the bulk sales act, the transfer of an interest, in whole or in part, in the assets of a co-partnership consisting of a stock of merchandise, or merchandise and fixtures, otherwise than in ordinary course of trade and in the regular prosecution of the business, is void as to creditors unless the purchaser receives a list of creditors of the seller, under oath, and unless the purchaser notifies every creditor stated in the list, *or of which he has knowledge,* of

the proposed sale. *Watkins* v. *Angus,* 241 Mich. 690; *Kobic* v. *Reed,* 242 Mich. 594. The defendants claim that they had no knowledge that plaintiff herein was a creditor. Elizabeth Paulus testified she had knowledge of plaintiff's suit at the time it was started. The son, Joseph Paulus, also admitted he had knowledge of plaintiff's suit. The attorney for defendants, who counseled and carried out the transactions for defendants whereby John Paulus divested himself of his property, had full knowledge of plaintiff's suit and his claimed indebtedness against Paulus. Knowledge of defendants' attorney was sufficient notice to defendants of plaintiff's claim as a creditor. *Littauer* v. *Houck,* 92 Mich. 162 (31 Am. St. Rep. 572); *Katz* v. *Kowalsky,* 296 Mich. 164 (134 A. L. R. 179). The parties failed to comply with the bulk sales act and plaintiff has a right to follow the property in the hands of defendants.

We are convinced by the record that John Paulus transferred his interest in the partnership to his wife and "to the said partnership" with intent to hinder, delay and defraud plaintiff herein of his lawful demand and damages arising out of his suit against Paulus for recovery of his investment in the brewery company. The time and circumstances of the transfer lead directly to this conclusion.

Every assignment of an interest in goods or things in action made with the intent to hinder, delay or defraud creditors is void as against such creditors. 3 Comp. Laws 1929, § 13434 (Stat. Ann. § 26.971). In the absence of proof that the indebtedness, if any, of John Paulus to his wife or to the partnership was satisfied, cancelled and discharged, and in view of the doubt from the testimony of defendant Elizabeth Paulus as to whether John Paulus was actually indebted to her or to the partnership, and, if so, in what amount, plus the conceded fact that Paulus became insolvent as a consequence of the transfers, it

is a fair inference that this transfer was without a fair consideration, in which event the actual intent of the transferor has no importance. 3 Comp. Laws 1929, § 13395 (Stat. Ann. § 26.884). This court has held:

"In a suit to set aside a conveyance of land alleged to have been made with actual intent to hinder, delay or defraud present or future creditors, the only method of determining actual intent is by a consideration of the circumstances surrounding the transaction (3 Comp. Laws 1929, § 13398 [Stat. Ann. § 26.887]).

"Surrounding circumstances which usually accompany an actual intent to hinder, delay or defraud creditors and from which fraud may be inferred are called badges of fraud (3 Comp. Laws 1929, § 13392 *et seq.* [Stat. Ann. § 26.881 *et seq.*]).

"When a questioned conveyance renders the grantor insolvent, fraudulent intent may be inferred (3 Comp. Laws 1929, § 13392 *et seq.*).

"As a general rule transactions between members of a family must be closely scrutinized when the rights of creditors are involved and when such transactions are accompanied by other badges of fraud, a full explanation of the conveyance is required when it is challenged by an unsatisfied creditor (3 Comp. Laws 1929, § 13392 *et seq.*)." *Bentley* v. *Caille* (*syllabi*), 289 Mich. 74.

In the case at bar, the lower court found that the transfer of the automobile by Paulus to his wife was without consideration. Defendants did not appeal from such holding, and if that finding is correct the same rule should apply to the transfer to his wife of his interest in the partnership. He continues to use the automobile the same as before the transfer. He continues active in the business, where his presence and good will are admitted to be of value. The maneuvers of this debtor on the eve

of the trial and judgment obtained against him in plaintiff's suit, in practical effect resulting in the transfer of all of his property to his wife and his son, are contrary to equity and good conscience.

As stated, the record is confusing as to the extent, if any, of the amount of investment in the copartnership by Elizabeth Paulus. In any event, her investment, if any, therein cannot be considered a loan to John Paulus. Conceding that she could not become a partner with her husband at the time the partnership was carried on, yet as to her separate property she could still become a partner with defendant John Danielewski in the enterprise. Equity does not require that she be divested of rights in the partnership for the benefit of plaintiff herein. The circuit court commissioner found—and it is not disputed—that on April 4, 1939, the value of the assets of the partnership was $25,000. It is fair to infer that John Paulus' one-fourth interest therein, or the income therefrom, would be sufficient to pay plaintiff's judgment. The transfer of Paulus' one-fourth interest in the partnership to his wife and to the partnership, and thence to his son, Joseph Paulus, without any consideration, through the medium of issuing stock in the corporation, is set aside.

The decree is affirmed as to the transfer of the automobile and the conveyance by Paulus of his interest in real estate, and a decree may be entered in this court setting aside and holding for naught the transfer of John Paulus' one-fourth interest in the partnership. It may be subjected to the payment of plaintiff's judgment (2 Comp. Laws 1929, § 9868 [Stat. Ann. § 20.28]). The decree may provide for remanding the case to the circuit court for such further proceedings as may be necessary for

enforcement thereof. Appellant may have costs of this court.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSH-NELL, SHARPE, and REID, JJ., concurred.